IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs November 14, 2017

**STATE OF TENNESSEE v. THOMAS J. PRIVETT**

**Appeal from the Circuit Court for Grundy County**
**No. 5580, 5495       J. Curtis Smith, Judge**

_____

**No. M2017-00539-CCA-R3-CD**

_____

The Defendant, Thomas J. Privett, entered a guilty plea to vehicular homicide by intoxication, with an agreed sentence length of ten years and the manner of service to be determined by the trial court. The trial court held a sentencing hearing and determined that the Defendant would serve his sentence in the Tennessee Department of Correction. On appeal, the Defendant argues that the trial court erred in denying alternative sentencing and in fully revoking his probation on a prior conviction. After a review of the record, we determine that there was no abuse of discretion, and we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

B. Jeffery Harmon, District Public Defender, and Robert G. Morgan, Assistant Public Defender, for the appellant, Thomas James Privett.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Mike Taylor, District Attorney General; and David McGovern, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The Defendant, while under the influence of methamphetamine, was driving a vehicle containing three passengers on Highway 108 in Grundy County. The Defendant

was aware that a spare "donut" tire was on the vehicle and was driving in excess of 100 miles per hour on the curvy highway. An accident occurred that resulted in the death of one of the passengers, Mr. Nicholas Hamblin.[1] The Defendant was charged with one count of vehicular homicide by intoxication, one count of vehicular homicide by reckless conduct, two counts of vehicular assault, and one count of driving while under the influence. The State entered into a plea agreement with the Defendant in which the Defendant would plead guilty to vehicular homicide by intoxication and the State would dismiss the remaining charges. The parties agreed to a sentence of ten years, with a release eligibility of thirty percent and with the manner of service to be determined by the trial court. Ten days before the accident occurred, the Defendant had pleaded guilty to aggravated burglary and was sentenced to four years of probation. His probation was later revoked as a result of this case, and the Defendant was sentenced to serve his entire four-year sentence concurrently with his ten-year sentence for the vehicular homicide conviction.

A sentencing hearing was held to determine the manner in which the Defendant's ten-year sentence for the vehicular homicide conviction would be served. At the hearing, Sheriff Clint Shrum from the Grundy County Sheriff's Department testified for the State. Sheriff Shrum testified that he was a drug recognition expert and instructor, specifically dealing with the recognition of impaired drivers on substances other than alcohol. He testified that he believed there is a "significant problem" with impaired driving and methamphetamine use in Grundy County. He testified that, in his opinion, a motorist under the influence of methamphetamine and driving in excess of eighty miles per hour on Highway 108 would not be a "safe situation." Sheriff Shrum acknowledged on cross examination that he did not have statistical data to support his statement that methamphetamine use and impaired driving was "much worse [in Grundy County] than anywhere else," but he claimed that he did have data to support the fact that such problems exist in Grundy County.

The State admitted a presentence report into evidence. The report reflected that the Defendant had a misdemeanor conviction for possession of drug paraphernalia, for which he received supervised probation. The report also reflected numerous driving offenses, as well as judicial diversion for an evading arrest charge and a reckless endangerment charge. The presentence report also listed domestic violence and vandalism charges that were dismissed. The report included a statement from one of the passengers, Ms. Halie Jo Fults. Ms. Fults told an officer at the scene, "I ask[ed] [the Defendant] to slow down; he did not and he knew there was a spare tire on the vehicle — I would like to know why he did not slow down." A victim impact statement from

---

[1] We note that the victim's name is sometimes spelled as "Hamlin" in the record. To remain consistent with the indictment, we will spell his name as "Hamblin."

Mr. Hamblin's mother was also included in the report, in which the mother requested leniency on the Defendant.

The Defendant testified that he was twenty-six years old and had been incarcerated for the past nine months. He stated that he was being held in a special facility to accommodate his Type I diabetes, which requires the use of an insulin pump. The Defendant stated that, on the day of the accident, he had worked during the day and then went "riding around" for "probably four hours" with Mr. Hamblin, Ms. Kalie Franklin, and Ms. Fults. He stated that he shared his methamphetamine with "one of the females," whom he refused to identify, but that he was not the "main supplier of the vehicle." The Defendant stated that he did not remember the accident at the time it occurred but that his memory had returned "a little bit since then."

The Defendant stated that Mr. Hamblin, "was like a brother" to him and that they had known each other "since [they] were in diapers." When asked what he would tell Mr. Hamblin on the day of the hearing, he responded, "How sorry I am. There's — there's nothing I can say to him to bring him back." When asked what he would tell the other two passengers in the vehicle, he said that he would "[g]ive anything to take it back." The Defendant told the trial court that he was "regretful that [he] didn't learn" from his previous criminal history.

The Defendant stated that he had previously worked with Mr. Darin Tudor in the sheet metal and air conditioning business and that he was previously an apprentice to Mr. Chris Cleek in the sheet metal industry. He stated that he had supported his daughter by paying bills and buying her "clothes, food, whatever she needed." He testified that his mother and father were taking care of his daughter while he was incarcerated.

On cross-examination, the Defendant acknowledged that he had vandalized a vehicle with his friends while still in high school. He said he destroyed the vehicle out of "stupidity," because he was on drugs and because they were "goofing off." He agreed that he took a set of wheels from the vehicle. The Defendant also acknowledged an evading arrest charge, which put seven other vehicles in danger, including three police cars. He agreed that he had several speeding tickets, but noted that only one traffic offense involved an accident. He also acknowledged that he was aware of the "donut" on the vehicle, that he was using methamphetamine, and that he was traveling over 100 miles per hour at the time of the accident.

The Defendant testified that he was "born an addict," and that he was prescribed pain killers following a surgery he had while in high school, which prevent him from quitting drugs. He stated that he began using methamphetamine when he was around twenty-three or twenty-four years old. He testified that he had smoked marijuana "a few

times" but that it was "not [his] thing." He explained that he had consistently been a drug addict since at least eighteen years of age with the exception of a six-month period after leaving a treatment facility. He also acknowledged that he failed a drug screening for morphine when he turned himself in on his first probation violation following the accident. He stated that while he had been incarcerated, he had participated in Celebrate Recovery, and Mr. David Hodges helped him locate rehabilitation programs to attend. The Defendant also stated that he would be interested in drug court.

Ms. Tara VanHoosier, the probation officer who prepared the presentence report, testified that the Defendant had a previous probation violation for a misdemeanor conviction of possession of drug paraphernalia but that there was no record of his probation being revoked. Ms. VanHoosier testified that the Defendant had a previous conviction for aggravated burglary, for which he was to serve his four-year sentence on probation. She was assigned to have an intake interview with the Defendant as his probation officer. However, the Defendant's accident occurred before the Defendant was scheduled to meet with Ms. VanHoosier. Ms. VanHoosier testified that the Defendant received his first probation violation on the burglary charge for the Defendant's use of methamphetamine and "behaving in a manner that posed a threat to others and himself" in connection with this case. An order was then issued that prohibited the Defendant from operating a motor vehicle. Ms. VanHoosier further testified that the Defendant later tested positive for morphine and admitted to driving a motor vehicle after being prohibited from doing so. She testified that to her knowledge, the Defendant had not paid the ordered restitution from his burglary conviction. Ms. VanHoosier further testified that when interviewing the Defendant for the presentence report, the Defendant reported that he had given methamphetamine to the other passengers of the vehicle. She stated that she had contacted Mr. Tudor, who informed her that the Defendant would be able work with Mr. Tudor "doing heating and air" but that much of the work would be outside of Tennessee.

Mr. DeWayne Privett, the Defendant's father, testified that the Defendant had played baseball until the Defendant's injuries prevented him from playing. The Defendant had surgery on his shoulder when he was sixteen or seventeen years old, and he was prescribed pain killers after the surgery. Mr. Privett stated that the Defendant graduated from high school with honors and that the Defendant was diagnosed with Type I diabetes at seventeen years old. Mr. Privett described the Defendant's attitude as changing "just out of the blue," and he stated that he believed his son's drug problem started "somewhere around his senior year." Mr. Privett explained that the Defendant went to drug rehabilitation facilities on two separate occasions. He explained that on the first occasion, the Defendant remained in the facility until "the insurance ran out" but that the Defendant was told "he was okay to come home." On the second occasion, he

- 4 -

remained in a facility for approximately four months but that he came home early "because he thought he was cured."

Mr. Privett also testified that the Defendant had a five-year-old daughter and that the child's mother was also involved in the burglary offense. Mr. Privett stated that the Defendant started to learn the sheet metal industry at a young age by working with Mr. Privett around the house. The Defendant worked in the industry for some time and eventually joined a sheet metal union, through which he participated in an apprenticeship program. Mr. Privett also acknowledged that the Defendant and some of his friends destroyed a vehicle while they were in high school. The Defendant was required to pay restitution, which was ultimately paid. Mr. Privett also acknowledged that the Defendant had an evading arrest charge that occurred close to the Defendant's eighteenth birthday.

Chief of Monteagle Police Virgil McNeese testified on behalf of the Defendant. Chief McNeese stated that he was the Defendant's football coach when the Defendant was nine and ten years old. Chief McNeese testified that he knew the Defendant's parents and that he was not aware of any drug use or alcoholism in the family home while the Defendant was growing up.

Mr. Chris Cleek testified on behalf of the Defendant and stated that he worked with the Defendant at Allied Mechanical from May to December of 2015. The Defendant was Mr. Cleek's apprentice, and Mr. Cleek stated that he never observed the Defendant being impaired while at work. Mr. Cleek testified that the Defendant left the job due to lack of work.

Mr. David Hodges also testified for the Defendant and stated that he was a certified Peer Recovery Specialist for the Tennessee Department of Mental Health. Mr. Hodges testified that he knew the Defendant from the Defendant's participation in Celebrate Recovery while the Defendant was incarcerated. The Defendant completed an eight-week course called Life's Healing Choices, which is a component of Celebrate Recovery. Mr. Hodges said that he believed the Defendant was present for every class and that the Defendant was "engaged" and "participating." Mr. Hodges also stated that he helped arrange for the Defendant to be interviewed and accepted into three other treatment programs. Mr. Hodges testified that the Defendant had expressed a desire to attend a treatment program on multiple occasions. Mr. Hodges acknowledged that there are some programs available in the jail and the Tennessee Department of Correction that address drug use.

The trial court denied alternative sentencing and determined that the Defendant would serve his sentence in the Tennessee Department of Correction. The trial court applied four enhancement factors: the Defendant had a previous history of criminal

behavior; the Defendant had previously failed to comply with conditions of a sentence releasing the Defendant back into the community; the Defendant did not hesitate when committing a crime that involved a high risk to human life; the Defendant had been on probation at the time of offense; and the Defendant had a juvenile adjudication that would constitute a felony if committed by an adult. *See* T.C.A. § 40-35-114(1), (8), (10), (13), and (16). The trial court noted that it gave "heavy weight" to factor (1), that the Defendant had a previous history of criminal behavior, and to factor (10), that the Defendant had no hesitation about committing the crime when the risk to life was high. The court gave "moderate weight" to factors (8) and (13), where the Defendant had been on probation for ten days when the accident occurred.

The trial court determined that the Defendant was a favorable candidate for alternative sentencing but still denied alternative sentencing. The court noted, "The proof establishes [the Defendant] has continuously violated the law, failed at probation and rehabilitation, is a drug addict and the Court concludes he is likely to misuse automobiles even when not licensed to drive." The Defendant timely appealed the denial of alternative sentencing for his vehicular homicide conviction and the full revocation of his probation for his aggravated burglary conviction.

## ANALYSIS

A trial court's decision regarding alternative sentencing is reviewed for abuse of discretion, accompanied by a presumption of reasonableness for a sentence that falls within the appropriate range and reflects that a decision was based on the purposes and principles of sentencing. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). A trial court's decision regarding probation will only be invalidated if the court "wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (order) (per curiam). Under an abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Id.* at 475.

The trial court should consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant" in determining whether alternative sentencing should be granted. *Id.* § 40-35-103(5). A trial court may deny alternative sentencing when:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1). "When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public." *State v. Brian Allen Cathey*, No. E2015-01284-CCA-R3-CD, 2016 WL 2641766, at *3 (Tenn. Crim. App. May 6, 2016) (citations omitted). The court should also consider the defendant's truthfulness. *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983). The defendant bears the burden of establishing his suitability for probation. *Id.* § 40-35-303(b).

Here, the Defendant was eligible for alternative sentencing because his sentence was for ten years. *See* T.C.A. § 40-35-303(a) (Supp. 2016). Although the trial court determined that the Defendant was a favorable candidate for alternative sentencing, the Defendant was convicted of a Class B felony and, therefore, was not considered to be a favorable candidate under the statute. *See* T.C.A. §§ 39-13-213(2)(A); 40-35-102(6)(A).

The Defendant argues that when applying enhancement factors (1) and (16), the trial court erroneously considered prior convictions and adjudications that were included in the presentence report when no corresponding judgments or juvenile records were included. "[F]acts relevant to sentencing need be established only 'by a preponderance of the evidence and not beyond a reasonable doubt.'" *State v. Cooper*, 336 S.W.3d 522, 524 (Tenn. 2011) (quoting *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000)). The Defendant testified to his own history of criminal behavior. He acknowledged that he had an evading arrest charge, several speeding tickets, and another traffic offense that resulted in an accident. The Defendant also acknowledged that he vandalized a vehicle and stole its wheels when he was a juvenile. Mr. Privett also testified as to the Defendant's previous vandalism and evading arrest charges. Additionally, it is undisputed that the Defendant had pleaded guilty to, and was sentenced to probation for, aggravated burglary merely ten days before the accident occurred. The presentence report, along with the testimony of the Defendant and Mr. Privett, clearly established these facts by a preponderance of the evidence.

The Defendant asserts that the trial court gave too much weight to enhancement factors (1), (10), and (16) and failed to apply mitigating factor (13) when testimony

demonstrated that the Defendant had a good work ethic and supported his family. *See* T.C.A. § 40-35-113(13). We note that "mere disagreement with the trial court's weighing of the properly assigned enhancement and mitigating factors is no longer a ground for appeal." *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). Moreover, Tennessee Code Annotated section 40-35-210(b) includes enhancement and mitigating factors in a list of multiple considerations to be made by a court in determining the appropriate combination of sentencing alternatives. In denying alternative sentencing, the trial court properly considered multiple enhancement factors, the presentence report, and the testimony from the sentencing hearing. *See* T.C.A. § 40-35-210(b). While the trial court did not make an explicit finding regarding the factors in Tennessee Code Annotated section 40-35-103(1), it is clear from the record that the court found that confinement was necessary to protect society by restraining the Defendant who has a long history of criminal conduct and that measures less restrictive than confinement had recently been applied unsuccessfully to the Defendant. The record supports these findings. Accordingly, we conclude that the trial court did not abuse its discretion in denying alternative sentencing for the vehicular homicide conviction.

In regards to the Defendant's probation revocation claim, the Defendant asserts that the trial court may have "reconsidered a full revocation of the Defendant's probation" if the Defendant had received an alternative sentence on the vehicular homicide conviction. The contention that the Defendant's probation should be reinstated is not supported by argument or with any citations to authority. Consequently, we conclude that this issue is waived. Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

## CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE